## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

DEAN ANDERSEN, an individual,   )
                       )
        Plaintiff,       )
                       )
     v.                 )      Case No.
                       )
MARK VAVRECK, an individual   )
and GONKO & VAVRECK, PLLC f/k/a  )      **PLAINTIFF DEMANDS**
MARTINEAU, GONKO & VAVRECK, PLLC, )      **TRIAL BY JURY**
a Minnesota Professional Limited Liability )
Corporation                  )
                       )
        Defendants     )
_____)

## COMPLAINT

Plaintiff, **DEAN ANDERSEN** ("Andersen"), by and through his undersigned attorneys, **THE PATTERSON LAW FIRM, LLC**, complains of Defendants, **MARK VAVRECK** ("Vavreck"), and **GONKO & VAVRECK, PLLC** ("G & V"), as follows:

## I. NATURE OF THE CASE

1.     This is an action for legal malpractice and professional negligence, breach of fiduciary duty and violation of Section 100.18(1) of Wisconsin's Deceptive Trade Practices Act against Defendants, a law firm and one of its attorneys, arising from their handling of a matter for Plaintiff under the Fair Debt Collection Practices Act ("FDCPA") and the Telephone Consumer Protection Act ("TCPA").

2.     Vavreck's "errors of counsel" in prosecuting Plaintiff's matter, as Judge J.P. Stadtmueller put it, were "serious failures", a "total failure" and

"substantial failures" as a "rare lawyer". The "errors of counsel" were both pervasive and egregious. These errors caused Plaintiff to lose his claims.

## II. PARTIES

3.     Plaintiff, Andersen, is an individual and a citizen of the State of Wisconsin. At all relevant times, Andersen was a client of Vavreck and G & V.

4.     Defendant, Vavreck, is an individual and a citizen of the State of Minnesota. Vavreck, at all relevant times, was and is an attorney licensed to practice law in the State of Minnesota and an employee of G & V.

5.     Defendant, G & V, is a Minnesota professional limited liability corporation with its principal place of business located at 401 Third Street North, Suite 600, Minneapolis, Minnesota.

## III. JURISDICTION AND VENUE

6.     Subject matter jurisdiction lies within this Court pursuant to 28 U.S.C. Section 1332, in that Plaintiff is a citizen of a different state than Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     Venue lies within this Court pursuant to 28 U.S.C. Section 1391(a)(2) in that a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District.

## IV. THE UNDERLYING FACTS

8.     Beginning in about October 2011, Harris & Harris ("Harris") began making automated calls and leaving prerecorded voicemail messages to Andersen's cell phone in an attempt to collect on debt on behalf of We Energies

incurred for utility services for the property commonly known as 505 Lake Street, Waukesha, Wisconsin (the "Lake Street Property").

9.      We Energies first obtained Andersen's cell phone number when Andersen had an earlier closed account with We Energies.

10.     This earlier closed account was paid in full on May 12, 2008.

11.     Andersen moved into the Lake Street Property on June 15, 2008 and paid all utility charges directly to the owner/landlord of the property as they continued to be in the owner's name.

12.     Andersen's landlord at the Lake Street Property called We Energies, six months after the June 15, 2008 move in date, on December 15, 2008 to switch the three (3) separate utility accounts into Andersen's name from his and provided We Energies all of Andersen's contact information. Exhibit A.

13.     Andersen had not provided We Energies with his cell phone number for the three (3) separate utility accounts attached to 505 Lake Street.

14.     Andersen's recorded voicemail greeting on his cell phone stated that "any and all automated calls and automated voicemail messages to this cell phone are strictly forbidden and any and all consent under 47 USC § 227 has been and is hereby revoked."

15.     At least one call made by an individual from Harris, as opposed to an autodialed call, was made to Andersen's cell phone.

16.     After this individual call, numerous autodialed calls were made by Harris & Harris ("Harris") to Andersen.

17.     163 autodialed calls were made, and 46 automated voicemail messages were left, by Harris.

18.     On July 24, 2012, Andersen spoke with an Edwin Gomez at Harris.

19.     During this call, Andersen was informed that he could not dispute the three (3) separate We Energies accounts in a manner other than in writing.

## V. <u>THE UNDERLYING MATTER</u>

20.     On June 19, 2013, Andersen contacted Vavreck concerning the possibility of representing him.

21.     Vavreck holds himself out on his website as specializing in the FDCPA, TCPA, and consumer actions.

22.     Vavreck, through his LinkedIn profile, states that he is an "Attorney who is a civil litigator specializing in consumer rights..."

23.     Vavreck, through his LinkedIn profile, states the following: "Specialties: Suing debt collectors and debt collection attorneys in Federal Court."

24.     On his website, Vavreck lists his bar admissions as including: "U.S. District Court Eastern District of Wisconsin, 2009."

25.     Vavreck lists several consumer legal seminars he has spoken at on his website to suggest his expertise in consumer rights litigation.

26.     Andersen relied on Vavreck's purported expertise in his decision to hire Vavreck.

4

27.     He reviewed his LinkedIn page, firm website, as well as other Internet pages, in selecting his attorney, and noted Vavreck's purported expertise as a reason to retain him.

28.     All of the above reasons are reasons Andersen retained Vavreck and his law firm.

29.     Andersen specifically relied upon his alleged expertise in the area of FDCPA and TCPA claims as well as his familiarity with the U.S. District Court for the Eastern District of Wisconsin.

30.     In Andersen's initial conversation with Vavreck on June 19, 2013, he informed Vavreck of the facts and circumstances giving rise to his claims.

31.     In this conversation, as well as in emails exchanged the same day, Vavreck and Andersen discussed bringing claims under the TCPA and the FDCPA.

32.     The TCPA claims were engendered by the autodialed calls and messages, while the FDCPA claim resulted from the July 24, 2012 conversation with Edwin Gomez.

33.     On June 20, 2013, Andersen sent a signed copy of the Retainer Agreement to Vavreck.  Exhibit B.

34.     On June 27, 2013, Andersen contacted Vavreck to discuss the progress on the drafting of the complaint against Harris & Harris, as the parties had discussed filing a complaint by the end of June.

35.     Vavreck informed Andersen that he was now uninterested in filing the FDCPA claims.

36.     Andersen informed Vavreck that the claims should be included as the parties had previously discussed.

37.     Andersen sent emails to Vavreck explaining the theory of recovery under the FDCPA and the merits for including such a claim in the complaint.

38.     On July 16, 2013, Andersen again asked Vavreck for an update on the FDCPA claims, as under the statute of limitations on the FDCPA claims the claims were to be filed on or before July 24, 2013.

39.     On July 16, 2013, Vavreck responded and stated that he would not be filing the FDCPA claims.

40.     Andersen was unable to find another attorney given the short notice and therefore lost the FDCPA claims.

41.     After refusing to include the FDCPA claims, Vavreck informs Andersen that there will be a delay in filing the action with the Court that may take up to five days.

42.     Andersen is rather confused and concerned and states that according to Vavreck, he has been registered with, and has practiced before, the Eastern District of Wisconsin since 2009. Vavreck assures Andersen that is the case saying that the delay in filing "appears to be a paperwork issue."

43.     Vavreck filed the complaint in the U.S. District Court for the Eastern District of Wisconsin on July 30, 2013, initiating *Andersen v. Harris & Harris*, 13-cv-867-JPS (the "lawsuit").

44.     The lawsuit sought damages for violations of the TCPA which, in pertinent part, prohibits individuals from making a call without the "prior

express consent of the called party" "using any automatic telephone dialing system or an artificial or prerecorded voice" and prohibits initiating "any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(a-b).

### a. Motion to Strike or Withdraw Admissions

45.     On November 1, 2013, Vavreck served discovery requests on Harris.

46.     Harris' responses would therefore be due on December 1, 2013 pursuant to the Federal Rules of Civil Procedure.

47.     On December 2, 2013, after the deadline to respond to the discovery requests had passed, at 4:47 PM counsel for Harris emailed Vavreck to request additional time to respond. According to Vavreck, counsel's reasoning for missing the deadline and requesting more time to respond was due in part because counsel had wanted to spend more time with his girlfriend in California.

48.     Counsel for Harris attempted to follow up with Vavreck by phone as well.

49.     However, Vavreck did not respond for several days.

50.     Harris filed a Motion to Strike or Withdraw Admissions to correct its late discovery responses and prevent it from becoming treated as an admission.

51.     In his Response to Defendant's motion, Vavreck misstated the date that discovery was due.

52.     Vavreck's Response mistakenly claimed that the discovery response was due on December 2, 2013, rather than December 1, 2013.

53.     Andersen notified Vavreck of this mistake prior to filing, multiple times, but Vavreck failed to correct it.

54.     After actually filing the Response with the wrong date, Vavreck emailed Andersen to "thank [him] for catching the items that [he] did."

55.     Andersen read the Response and noticed that the Certificate of Filing stated that the filing was "Plaintiff's Memorandum of Law in Support of the Motion for Summary Judgment". Andersen emailed Vavreck informing him of this mistake as well. Vavreck was required to remove the wrongly filed Certificate and file the correct one.

56.     Andersen also noticed that Vavreck did not change the date discovery by Defendant was due and sent Vavreck another email notifying Vavreck of the still not corrected mistake.

57.     Vavreck responded by stating: "We did in fact make those changes. Thanks for catching them." However, the changes had not been made.

58.     Andersen, again, notified Vavreck that the changes had indeed not been made; however, Vavreck never responded and the errors were never corrected.

59.     Due to failing to follow local rules in filing, Vavreck was required to file a corrected motion two days later.  Vavreck's corrected filing was addressed to the wrong judge.

60.     Judge J.P. Stadtmueller issued his Decision on the Motion, noting "Andersen, himself, is responsible for much of any alleged prejudice he may suffer."

61.     He found that "given Andersen's failure to provide  Harris  & Harris with a decision on Harris &  Harris' request for an extension, the Court finds that there is  good  cause to excuse Harris & Harris' failure to  timely  file its responses to interrogatories and  production  requests."

62.     Because of Vavreck's refusal to correct his misstatement, the Court treated Harris & Harris' request for additional time as occurring on the discovery due date, rather than after the due date.

63.     This incorrect treatment of the date on which discovery was due, caused by Vavreck's repeated refusal to correct the date after being notified by Andersen, coupled with the fact that Vavreck would not respond to Defendant's counsel for several days, was reflected in the Court's statement that "if Andersen had responded to Harris & Harris' request for an extension in a reasonable time period, it is possible that Harris & Harris could still have timely filed their responses and avoided this whole mess."

64.     Had the correct date been noted by Vavreck, the Court would have become aware that the request for an extension was made after the deadline had passed.

9

65. The Court therefore granted Harris & Harris time to file late.

66. Had Vavreck corrected his mistake and responded to Defendant's counsel the next day like he informed Andersen he would (or even the next few days), the Court would not have been able to state "the Court finds that there is good cause to excuse Harris' failure to timely file its responses to interrogatories and production requests" and find against Andersen and for the Defendant due to Vavreck's failures.

67. The Court would again come back to this in its order on the Motions for Summary Judgment in a statement critical of Vavreck in which it called Harris' request for an extension "timely." Docket # 57, p. 2.

**b. The Proposed Amendment**

68. Andersen, after reading a copy of an email Vavreck sent to Defendant's counsel stating that Andersen was going to amend the filed Complaint but decided not to at this time, sends Vavreck an email requesting clarification of the email.

69. Vavreck told Andersen that he was considering amending the Complaint to include the FDCPA violations but decided, once again, not to, giving Andersen the reasoning that all of the calls were "too old."

70. Andersen replied to Vavreck informing him that when Vavreck agreed to include the FDCPA violations they were still under the one year statute of limitations.

71. Vavreck responded to Andersen stating that the calls were "always outside the statute, which is why we didn't include them."

72.     Andersen responded, correcting and informing Vavreck that he signed the Retainer Agreement on June 20, 2013, five weeks before the statute of limitations ran out.

73.     Vavreck never responded to Andersen.

74.     The Retainer Agreement included the FDCPA violations that Vavreck promised he would include in the action but then later refused to even at Andersen's insistence.

75.     Vavreck's statement demonstrates Vavreck's failure to investigate, pursue or analyze Andersen's matter as well as his total lack of familiarity with the matter and applicable law, despite Vavreck's alleged specialization in the area.

**c. Andersen's Deposition.**

76.     Andersen was deposed on March 13, 2014.

77.     At the deposition, Vavreck stated that Andersen's offers of settlement were not covered under Federal Rule of Evidence 408, when the Court's opinion unequivocally stated that they were.

78.     Defendant's counsel handed Andersen an email written to counsel from Vavreck and asked Andersen, repeatedly, several times, if he knew what Vavreck meant in the email.  In this email, Vavreck was critical of Andersen and had shared Andersen's communications with opposing counsel.

79.     In this deposition, after a short break, Vavreck stipulated on the record that Andersen did not suffer an injury-in-fact.

80. At the deposition, without Andersen's consent, Vavreck agreed to an abbreviated briefing schedule, a mistake that would subsequently have serious consequences.

81. Vavreck failed to object to questions posed to Andersen.

82. After the deposition, Andersen informed Vavreck that he wished to amend some of his statements made at his deposition for clarity.

83. Vavreck informed Andersen that he requested a "read and sign" to allow Andersen to correct any errors in the transcript saying "that is the procedure".

84. In fact, Vavreck had never requested a "read and sign," resulting in inaccuracies to not be able to be corrected by Andersen.

85. Andersen subsequently emailed Vavreck and told him that he would like to make an offer to settle with Defendant. Vavreck did not like that idea and responded by stating that if that time comes, if they settle, Vavreck planned to settle for more than three times the amount Andersen stated in his email.

86. Thereafter, Andersen states that he would like to voluntarily dismiss the action without prejudice until the Seventh Circuit clarifies the meaning of "prior express consent" under the TCPA, Vavreck refuses and informs Andersen that he will not dismiss the action as the statute of limitations for a TCPA claim is two years. In reality, the statute of limitations is four years and Andersen would have had plenty of time to refile.

87. Andersen replied and informed Vavreck that the TCPA has a four year statute of limitations, not a two year statute of limitations.

88. Vavreck never responded.

89. Vavreck's refusal demonstrates Vavreck's failure to investigate, pursue or analyze Andersen's matter as well as his total lack of familiarity with the matter and applicable law, despite Vavreck's alleged specialization in the area.

### d. The Motions for Summary Judgment and Accompanying Documentation

90. Both parties filed Motions for Summary Judgment.

91. Instead of the conventional briefing schedule, in which there would be a motion, response, and a reply for each motion for a total of six briefs, Vavreck, mistakenly as he later finds out when he gets back to his office from his law clerk, agreed to a modified briefing schedule of four briefs.

92. In addition to the Motions for Summary Judgment, proposed statements of fact and a Motion to Strike were filed.

93. Vavreck's failure to follow local rules was pronounced in this briefing.

### i. The Statements of Fact

94. In its order deciding the Motions for Summary Judgment, the Court began by noting that "the Court must first discuss Mr. Andersen's serious failures to follow the Eastern District's Civil Local Rules." Docket #57, p. 1.

95. Many of these "serious failures" resulted from the failure to comply with the rules governing the statements of fact.

96. The Court began "with a primer on the Civil Local Rules of the Eastern District of Wisconsin," noting that Civil Local Rule 56 ("Rule 56"), governing summary judgment materials, requires the movant to provide a proposed statement of facts, requires the nonmovant to reply with admissions or denials and any additional facts, and requires the movant to reply to any new facts by admitting or denying them. Docket #57, p. 2.

97. The Court noted that the Rule 56 provides that the Court will deem any uncontroverted facts as true for the purpose of deciding the motion for summary judgment. Docket #57, p. 2.

98. Vavreck failed to comply with Rule 56, with the Court stating that "Mr. Andersen, through counsel, has not followed *any* of those rules" and that the failures were "substantial." Docket #57, p. 2 (emphasis is original).

99. Vavreck did not follow Rule 56 in his initial brief as he did not originally file an accompanying statements of facts.

100. Opposing counsel had to advise Vavreck of his failure, causing the Court to state that Vavreck "barely remembered to file the statement of fact required of him as a movant." Docket #57, p. 2.

101. In fact, Vavreck had only filed his statement of fact after Harris' counsel "advised Mr. Andersen's counsel of his failure to submit proposed findings of fact." Docket #57, p. 3.

102. Harris responded to the statement of facts as required under Rule 56 and, as allowed under Rule 56, submitted additional facts.

103. Vavreck, now responding with his second brief, yet again failed to respond to these additional facts as required by Rule 56, despite the fact that his non-compliance with the local rules had been previously brought to his attention.

104. Even after both opposing counsel and Andersen informed Vavreck of this error, Vavreck refused to correct the error, informing Andersen that "we did file appropriately" and "there is nothing to be done."

105. The result of this failure was the Court deciding that "it *must* deem [Harris'] additional proposed facts as admitted, as a result of Mr. Andersen's failure to respond to them" as Rule 56 uses the mandatory "will" in stating that facts without a response will be admitted for the purpose of the summary judgment motion. Docket #57, p. 4 (emphasis added).

106. While the Court did state that it would look to determine whether the facts were "based upon inappropriate or inadmissible evidence," it would otherwise treat Harris' facts as admitted. Docket #57, p. 5.

107. The Court thereafter cited many of Harris' proposed facts in its "Factual Background" section and in coming to a conclusion.

**ii. The Motions for Summary Judgment and Motion to Strike**

108. In both parties' Motions for Summary Judgment, the parties each claimed that they were entitled to judgment.

109. Both parties provided affidavits in support of their motions.

110. However, Vavreck's brief included solely a two-page affidavit for Andersen that addressed few of the issues in the lawsuit.

111. Vavreck's Memorandum and Affidavit failed to include basic facts about the case, such as when Andersen moved into the Lake Street Property.

112. Andersen informed Vavreck of the specific date, and offered to provide the lease if needed after Vavreck emailed Andersen and asked for this information, saying he was putting the summary judgment memorandum together.

113. Andersen had specifically requested that this fact be included, but Vavreck did not include it.

114. Its omission was later noted in the Court's Order.

115. Harris, on the other hand, provided a lengthy, detailed affidavit of Tim Brown, a We Energies employee purportedly summarizing We Energies' records.

116. Andersen informed Vavreck of facts supported by evidence to contradict the allegations in the Affidavit, noting that the recording made with a We Energies employee and the actual WE Energies Notes turned over in discovery would demonstrate the falsity of the Tim Brown statements.

117. However, Vavreck never rebutted the false statements in the Affidavit.

118. Andersen strenuously requested that additional affidavits and evidence to prove the claims be submitted; however, Vavreck refused, claiming that he had the "final say."

119.    In the order on the Motions for Summary Judgment, the Judge noted the failure to include contradictory evidence to the Tim Brown Affidavit.

120.    Additionally, in Andersen's Memorandum of Law in Support of his Motion for Summary Judgment, Vavreck criticized the inclusion of the Affidavit of Tim Brown based on the allegation that Tim Brown had not been disclosed during discovery.  Docket #43, p. 17-19.

121.    However, as Harris pointed out, Tim Brown had been disclosed in an email to Vavreck; rather, Vavreck had apparently forgot and failed to depose him.  Docket #49-1.

122.    Vavreck filed a Motion to Strike the affidavit of Tim Brown and other exhibits, in an apparent attempt to avoid the failure to depose him.

123.    However, Vavreck's failure to depose Tim Brown allowed Tim Brown's statements to have been made without the benefit of a deposition, severely hampering Andersen's ability to demonstrate the falsity of the allegations.

124.    Vavreck failed to give an explanation for why he failed to depose the disclosed We Energies witness.

**e.  The Summary Judgment Order**

125.    The Court granted summary judgment in favor of Harris.

126.    The Court provided a lengthy discussion of the history of the case and Vavreck's "serious failures" to follow the local rules.

127.    The Court proceeded to a substantive analysis of the case.

128. In this analysis, the Court relied on Harris' additional facts, which it was required to deem as true due to Vavreck's failure to respond to them.

129. This proved fatal to Andersen.

130. However, before getting to the facts, the Court discussed Andersen's standing to pursue the claims based on Vavreck's stipulation in Andersen's deposition that Andersen did not suffer an injury in fact. Docket #57, p. 14.

131. The Court posed a question of "What was Mr. Andersen's counsel thinking? Essentially, in stipulating to that fact, he stipulated that his client could not pursue this case." Docket #57, p. 14.

132. The Court could not find any case law from the Seventh Circuit on whether such stipulation should be effective, noting that this was likely due to the fact that "it is a rare lawyer who would stipulate on the record that his client did not suffer an injury-in-fact." Docket #57, p. 14.

133. The Court relying on the Tim Brown affidavit and Defendant's unrebutted Statement of Facts determined that the case must be dismissed as i) Andersen provided the cell phone number to We Energies, thus consenting and ii) Andersen's revocation was ineffective.

134. The Court therefore granted Harris' Motion for Summary Judgment.

135. Harris' costs, which were assessed against Andersen, totaled $1,901. Docket #67.

136.    Although Vavreck had stated that he would appeal the decision should it be decided against Andersen, Vavreck refused to discuss the Judge's decision or any potential appeal.

137.    Because of Vavreck's abrupt termination of representation after the Judge's decision, Mr. Andersen was forced to file a Motion for Reconsideration with the Court outlining Vavreck's several "serious failures" and using all of the evidence Vavreck either failed to or refused to use previously.

138.    The evidence Mr. Andersen provided included the We Energies Notes handed over in discovery by Defendant that prove that everything the Court stated, and relied upon, in its "Factual Background" in its Decision (including the signed and sworn Affidavit of Tim Brown) was incorrect

139.    In the Court's Decision on Mr. Andersen's motion, the Court stated that Mr. Andersen was not allowed to use the evidence because it had been available to his former counsel, Vavreck, noting that "Mr. Andersen has not presented anything to establish the 'new discovery' of this evidence… the Court's summary judgment order acknowledged that Mr. Andersen's attorneys had not property objected to the proposed facts; thus, that procedural failure remains."

140.    The Court proceeded to state that Mr. Andersen's Motion was not the appropriate vehicle to address "a judgment that resulted from errors of counsel," noting that "[e]ven where a malpractice action could potentially lie – Rule 60(b)(1) was not the appropriate vehicle for relief from a judgment that resulted from errors of counsel."

141.	At all times pertinent herein, Plaintiff relied on Vavreck for advice and counsel regarding the claims in his case.

142.	Defendants were obligated by the attorney-client relationship to fully, fairly and competently represent Plaintiff in all respects.

143.	At all times herein, Plaintiff was advised by the Attorneys and believed that he could rely on them for advice and trust their decisions.

144.	Indeed, Defendants held themselves out as experts in the matters for which they represented Plaintiff.

145.	At all times during the period of Plaintiff's representation by Attorneys, the most confidential, fiduciary relationship existed between them. Vavreck was obligated by the attorney-client, fiduciary relationship to deal fairly, justly, and honestly with Plaintiff, to be loyal to him and to place Plaintiff's interests before their own interests. The duty of honesty required Defendants to not only avoid making untrue or misleading statements, but to disclose all information reasonably necessary for Plaintiff to make informed decisions.

146.	Defendants were further obligated to act in accordance with the Rules of Professional Conduct.

147.	During the period of representation, Defendants failed to exercise reasonable care, skill, and diligence in performing legal services for Plaintiff and were negligent in their representation of Plaintiff as set forth below.

148.	During the period of representation, Defendants breached their fiduciary and ethical duties to Plaintiff, made affirmative misrepresentations

and fraudulent statements to Plaintiff, failed to disclose and purposefully withheld material information from Plaintiff and placed their own interests before those of Plaintiff's, as more fully set forth below.

149.　During the period of representation, Defendants' "serious failures" were willful and wanton, reckless, and showed a casual and utter disregard and reckless indifference.

## COUNT I
### (Legal Malpractice-As to All Defendants)

150.　Plaintiff repeats and realleges Paragraphs 1 through 149 of the Complaint as though fully set forth herein.

151.　At all times relevant hereto, Defendants had an attorney-client relationship with Andersen, and a duty, among other things, to: zealously represent Andersen's interests; provide Andersen with an informed understanding of his legal rights, obligations and their practical implications; and zealously represent him.

152.　As Andersen's attorneys, Defendants were required to possess and apply the knowledge and use the skill and care ordinarily used by reasonably careful attorneys.

153.　Because he held himself out to specialize in the FDCPA, TCPA, and consumer actions, Vavreck is to be held to a higher standard.

154.　Defendants breached the duties owed to Andersen, and the standard of care governing the conduct of attorneys, and committed numerous acts or omissions constituting negligence.

21

155.    Defendants deviated from the standard of care in i) informing Andersen that an FDCPA action would be filed but refusing to do so, ii) misstating (and failing to correct the misstatement after being informed and being given numerous opportunities to do so) the due date in response to the Motion to Strike or Withdraw Admissions, iii) failing to depose Tim Brown even after his contact information became available to Vavreck a second time, iv) failing to respond to Harris' additional facts (and refusing to correct this failure after being notified of the failure by both opposing counsel and Mr. Andersen), iv) failing to follow local rules repeatedly throughout the litigation, v) stipulating that Andersen lacked standing to sue, vi) failing and refusing to submit affidavits and evidence to rebut the allegations in the affidavit of Tim Brown, and vii) refusing to appeal the Court's decision after promising Andersen that they would.

156.    But for these errors, Harris' unrebutted facts would not have been deemed admitted.

157.    But for these errors, the affidavit of Tim Brown would have been discredited through the introduction of contradictory evidence and through the discrediting of Tim Brown at his deposition.

158.    But for these errors, summary judgment would not have been granted.

159.    But for these errors, Plaintiff would have been successful in his claim.

160.    But for these errors, Plaintiff would not have had costs assessed against him.

161.    But for these errors, Plaintiff would have obtained a monetary judgment.

162.    Plaintiff has suffered damages as a result of Defendants' professional negligence as set forth herein.

WHEREFORE, Plaintiff, DEAN ANDERSEN, prays that this Court enter judgment in his favor against Defendants, MARK VAVRECK and GONKO & VAVRECK, PLLC, for compensatory damages in an amount to be determined at trial, but in excess of $75,000, punitive damages, and for any and all other relief that this Court deems appropriate under the circumstances.

**COUNT II**
**(Breach of Fiduciary Duty- As to All Defendants)**

163.    Plaintiff repeats and realleges Paragraphs 1 through 149 of the Complaint as though fully set forth herein.

164.    As Andersen's attorneys, Defendants owed a duty of loyalty to Andersen to act in a manner in the best interest of Andersen.

165.    Defendants owed a duty to not put their interests before Andersen's interests.

166.    Defendants breached this duty by refusing to admit their errors in compliance with the local rules, thereby precluding Andersen from correcting the errors.

167.    In doing so, Defendants put their interests ahead of Andersen's interests.

23

168. Defendants breached their duty by refusing to discuss the Court's decision on the Motion for Summary Judgment or an appeal, despite having told Andersen that they would do so.

169. Defendants refused to have these conversations to protect themselves from admitting their errors, to the detriment of Andersen.

170. Defendants put their interest before that of Andersen.

171. As a result of Defendants' breaches, Andersen i) lost the ability to attempt to correct Defendants' mistakes and ii) was unable to pursue the appeal that the parties had previously discussed.

172. Andersen was damaged by these breaches.

173. Moreover, Vavreck put his own interests before Andersen's through making disparaging statements to opposing counsel concerning Andersen that were exploited by opposing counsel in Andersen's deposition.

174. Vavreck put his own interests before Andersen's by failing to correct his mistakes after they were made, and often after Andersen informed him of the errors, in the interest of concealing his errors.

175. This prejudiced Andersen by having the errors remain uncorrected.

176. One of these errors, the failure to respond to Harris' statement of facts, resulted in the loss of Andersen's case.

177. Finally, Vavreck put his interests ahead of Andersen's by providing Andersen documents that were not actually filed upon the return of Andersen's file, thereby misrepresenting the court record.

178. Vavreck provided Andersen with a file that included a Refusal to Consent to Proceed Before a U.S. Magistrate Judge signed by Vavreck. Exhibit C.

179. This document was marked as Document 10 by the clerk, suggesting it was filed and obtained from PACER.

180. However, the actual Document 10 available on PACER demonstrates that Vavreck did not sign the document. Exhibit D.

181. This discrepancy, both on documents purportedly obtained from the clerk's file, suggests that Vavreck altered the documents provided to Andersen.

182. As the documents were given to Andersen after Vavreck was chided by the Court for his "serious failures," it appears that Vavreck altered the file for his own personal gain to Andersen's detriment, again constituting a breach of Vavreck's fiduciary duties.

WHEREFORE, Plaintiff, DEAN ANDERSEN, prays that this Court enter judgment in his favor against Defendants, MARK VAVRECK and GONKO & VAVRECK, PLLC, for compensatory damages in an amount to be determined at trial, but currently believed to be in excess of $75,000, punitive damages, and for any and all other relief that this Court deems appropriate under the circumstances.

**COUNT III**
**(Section 100.18(1) of Wisconsin Deceptive Trade Practices Act –**
**As to All Defendants)**

183.   Plaintiff repeats and realleges Paragraphs 1 through 149 of the Complaint as though fully set forth herein.

184.   Andersen relied upon the representations made by Vavreck of his expertise in consumer law claims.

185.   Andersen relied upon the representations made by Vavreck of his ability to practice before, as well as his familiarity with, the U.S. District Court for the Eastern District of Wisconsin.

186.   Vavreck made these representations to the general public on his website, LinkedIn page, and other Internet pages.

187.   Vavreck made these representations so that members of the general public, such as Andersen, would see these representations, rely on these representations and retain his services.

188.   Vavreck intended that the public would retain his services based on these representations concerning his experience and knowledge.

189.   Andersen retained Vavreck based upon on these representations.

190.   Vavreck's representations concerning his specialization were untrue, as demonstrated by his lack of knowledge and familiarity with the consumer claims during Andersen's case.

191.   Vavreck's representations concerning his ability to practice before, and familiarity with, the U.S. District Court for the Eastern District of

Wisconsin were untrue, as demonstrated by his lack of knowledge and familiarity with the District Court and its Local Rules.

192.    As a result of his reliance on these representations, Andersen experienced a financial loss, as Vavreck failed to obtain a recovery for him.

193.    But for Vavreck's representations, Andersen would have not hired Vavreck and would have hired an attorney who would have competently and zealously successfully prosecuted Andersen's claims.

WHEREFORE, Plaintiff, DEAN ANDERSEN, prays that this Court enter judgment in his favor against Defendants, MARK VAVRECK and GONKO & VAVRECK, PLLC, for compensatory damages in an amount to be determined at trial, but currently believed to be in excess of $75,000, punitive damages, attorneys' fees and for any and all other relief that this Court deems appropriate under the circumstances.

**JURY DEMAND**

Dean Andersen demands a jury trial on all claims alleged herein.

Respectfully submitted,
**Dean Andersen,**
Plaintiff

By: /s/Jefferey O. Katz
One of His Attorneys
Jefferey O. Katz
Michael D. Haeberle
The Patterson Law Firm LLC
One North LaSalle St., Suite 2100
Chicago, Illinois 60602
T:  (312) 223-1699
IL Bar No. 6283209 (Katz)
IL Bar No. 6309164 (Haeberle)

Dated:  June 2, 2015