IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEAN A. ANDERSEN,

    Plaintiff,

v.

MARK VAVRECK and
GONKO & VAVRECK PLLC,

    Defendants.

Case No. 15-cv-667-PP

**ORDER GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 51) AND DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 61)**

## I. INTRODUCTION

Plaintiff Dean Anderson filed a malpractice claim against attorney Mark Vavreck, whom Andersen retained to sue a debt collection agency. On June 2, 2015, the plaintiff filed a complaint against defendant Vavreck and his law firm, Gonko & Vavreck PLLC, alleging legal malpractice, breach of fiduciary duty, and fraudulent misrepresentation. Dkt. No. 1.[1] The parties have filed cross-motions for summary judgment. The court finds that there are no genuine disputes of material fact, and that the defendants are entitled to judgment as a matter of law.

---

[1] All of the docket citations, unless otherwise marked, refer to this case (as opposed to the underlying case in which the plaintiff alleged that the defendants committed malpractice).

## II. FACTS

### A. The Initial Debt-Collection Suit

On June 20, 2013, the plaintiff retained Vavreck, a principal of Gonko & Vavreck PLLC, to sue debt collector Harris & Harris LTD ("H&H") for calling his cell phone several times without his prior consent. Dkt. No. 55-2 at 4. H&H was acting as a third party collector on WE Energies' behalf. Andersen v. Harris & Harris, 13-cv-867, dkt. no. 57 at 18. [2] The plaintiff alleges that while he wanted to sue H&H for violation of the Fair Debt Collection Practices Act ("FDCPA"), the Wisconsin Consumer Act, and the Illinois Collection Agency Act, Vavreck would agree only to pursue a Telephone Consumer Protection Act ("TCPA") claim. Dkt. No. 53 at ¶¶3, 5; Dkt. No. 66 at ¶5. Still, the plaintiff alleges, he contacted Vavreck several times to try to convince him to pursue the FDCPA claim. Dkt. No. 53 at ¶¶39, 41, 43; Dkt. No. 55-15 at 1-3. Every time, Vavreck responded that the claim did not have merit, and asked if the plaintiff wished to proceed on his TCPA claim. Dkt. No. 53 at ¶¶41, 43; Dkt. No. 55-16 at 1. The plaintiff eventually decided to proceed on the TCPA claim, and abandoned the FDCPA claim. Dkt. No. 55-17 at 1. Vavreck filed the complaint on July 30, 2013. H&H, dkt. no. 1.

Throughout the course of the H&H litigation, Vavreck and the plaintiff discussed the possibility of settlement with H&H. Initially, H&H offered $3,500, the plaintiff countered at $75,000, and H&H counter-offered at $5,000. Dkt.

---

[2] This decision and order will refer to the collection suit against H&H as "H&H," followed by the docket number.

No. 69, Pl. Ex. 33.[3] H&H's counsel, however, "made it abundantly clear that his client did not want to settle." Id., Pl. Ex. 23. Following some discovery disputes, the plaintiff became concerned about Judge Stadtmueller and Judge Stadtmueller's view of the plaintiff, and indicated that he wanted to make a settlement offer to show that he was not the "unreasonable" party, even though he knew opposing counsel would not accept the offer. Id., Pl. Ex. 24. Vavreck stated that he did not think a counter offer would influence the court, but suggested $70,000 if the plaintiff decided to go through with the offer. Id. Then, prior to responding to H&H's summary judgment motion, Vavreck suggested a settlement offer of $9,000. Id., Pl. Ex. 35. After the plaintiff said "[n]o [w]ay," Vavreck continued to brief the summary judgment motion. Id.

Judge Stadtmueller granted H&H's summary judgment motion, finding that the plaintiff had consented to H&H's debt collection phone calls despite the fact that the plaintiff had a voicemail message on his cell phone which he indicated was designed to revoke consent. H&H, dkt. no. 57 at 19-21. Because he found that the plaintiff had consented, Judge Stadtmueller also found that the plaintiff could not recover from H&H under the TCPA. Id. Judge Stadtmueller also discussed what he viewed as Vavreck's failing as the plaintiff's lawyer. Id. at 1, 13. Judge Stadtmueller found that Vavreck failed to

---

[3] The plaintiff filed a flash drive with the court, containing defendant Vavreck's deposition transcript and a number of exhibits. The clerk of court could not provide access to the documents on the flash drive on the docket. Instead, there is a place-saver at Dkt. No. 69, which refers to the flash drive. Whenever the court cites one of the exhibits the plaintiff put on the flash drive, it will use the citation format, "Dkt. No. 69," followed by the number of the exhibit contained on the drive.

properly respond to H&H's proposed findings of fact, per the court's local rules, and that Vavreck stipulated that the plaintiff lacked standing. Id. at 1-2, 13-14. Although both of these mistakes could have resulted in dismissal of the plaintiff's complaint, Judge Stadtmueller's decision stated that he decided the motion on the merits. Id. at 4, 16.

The defendants withdrew as the plaintiff's trial counsel shortly after the summary judgment decision. H&H, dkt. no. 59. The plaintiff then filed a *pro se* motion for reconsideration, detailing the defendants' failures and providing additional legal justification for his claim. H&H, dkt. no. 62. Judge Stadtmueller denied the motion, concluding that the plaintiff did not present sufficient legal authority to cause the court to question its prior order. H&H, dkt. no. 66 at 2. He also noted that, "to the extent that [the plaintiff] believes that his attorneys should be liable to him, that is a separate matter between him and the attorneys." Id. at 4.

**B.     The Instant Malpractice Suit.**

Instead of appealing Judge Stadtmueller's legal determinations, the plaintiff filed this complaint against the defendants. Dkt. No. 1. On March 7, 2016, the defendants filed a motion for summary judgment. Dkt. No. 51. Two months later, the plaintiff filed a cross-motion for summary judgment. Dkt. No. 61. Because the plaintiff has failed to demonstrate a causal link between his failure to recover from H&H and the defendants' conduct, the court must grant summary judgment in favor of the defendants (dkt. No. 51), and deny the plaintiff's summary judgment motion (dkt. no. 61).

### III. JURISDICTION AND CHOICE OF LAW

Jurisdiction under 28 U.S.C. §1332 requires diversity of citizenship and an amount in controversy exceeding $75,000. The plaintiff seeks damages in excess of $75,000, and resides in Wisconsin. Dkt. No. 1 at ¶¶3, 6. Vavreck lives in Minnesota. Id. at ¶4. Gonko & Vavreck PLLC has its principal place of business in Minnesota. Id. at ¶5. Accordingly, the court has jurisdiction over these claims pursuant to 28 U.S.C. §1332.

When a federal court has diversity jurisdiction, it must follow the choice of law rules of the forum state to determine the applicable substantive law. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941). Here, neither party appears to dispute that Wisconsin law applies. See Wood v. Mid-Valley Inc., 942 F.2d 425, 427 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies."); ECHO, Inc. v. Whitson Co. Inc., 52 F.3d 702, 707 (7th Cir.1995) (noting that the court should apply the forum state's law in the absence of any argument to the contrary) (citing Checkers, Simon & Rosner v. Lurie Corp., 864 F.2d 1338, 1345 (7th Cir. 1988).

### IV. DISCUSSION

The plaintiff alleges that the defendants prevented him from obtaining a recovery in the H&H case as a result of their (1) legal malpractice; (2) breaches of fiduciary duty; and (3) fraudulent misrepresentations in violation of Wis. Stat. §100.18. Dkt No. 1 at ¶¶1, 158-59, 176, 182. The defendants respond

that the plaintiff's claims lack merit and supporting facts. Dkt. No. 52 at 1. The court agrees.

### A. Summary Judgment Standard.

A court must grant summary judgment when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "facts that might affect the outcome of the suit under the governing law," and a dispute about a material fact is genuine if a reasonable jury could find in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When determining whether summary judgment is appropriate, the court views all facts and draws all reasonable inferences in favor of the nonmoving party. Herzog v. Graphic Packaging Int'l, Inc., 742 F.3d 802, 806 (7th Cir. 2014). With that said, "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." Id. (quoting Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc., 517 F.3d 470, 473 (7th Cir. 2008)). The opposing party cannot simply rely on allegations or denials in its pleadings; it also must "introduce affidavits or other evidence setting forth specific facts showing a genuine issue for trial." Anders v. Waste Mgm't of Wis., 463 F.3d 670, 675 (7th Cir. 2006). "[A] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 437 (7th Cir. 2000) (quoting Smith v. Severn, 129 F.3d 419, 427 (7th Cir. 1997)). A court appropriately grants summary judgment "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

> **B.     No Reasonable Juror Could Find that the Defendants'
>         Conduct Caused the Plaintiff's Failure to Recover on
>         his TCPA Claim.**

In order to prove each cause of action he has alleged, the plaintiff must prove that the defendants' conduct caused his damages. To prevail on his malpractice claim, the plaintiff must prove (1) the existence of an attorney-client relationship, (2) acts or omissions constituting the alleged negligence, (3) that the acts or omissions proximately caused the plaintiff's injury, and (4) the extent of the injury. Kraft v. Steinhafel, 869 N.W.2d 506, 510 (Wis. 2015), review denied, 872 N.W.2d 669. To prove his claim for breach of fiduciary duty, the plaintiff must prove that (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that duty; and (3) the breach caused the plaintiff's damage. Chapes v. Pro-Pac, Inc., 473 B.R. 295, 301 (E.D. Wis. 2012) (citing Berner Cheese Corp. v. Krug, 752 N.W.2d 800, 809 (Wis. 2008)). Finally, to prevail on a fraudulent misrepresentation claim under Wis. Stat. §100.18, the plaintiff must show that (1) the defendants made a representation to the public with intent to induce an obligation, (2) the representation was untrue, deceptive or misleading, and (3) the representation caused him to suffer a pecuniary loss. Estate of Bluma Weinstock v. ADT LLC, No. 15-CV-1391-PP, 2016 WL 3676486, at *7 (E.D. Wis. July 7, 2016) (citing K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc., 732 N.W.2d 792, 798 (Wis. 2007)). Even if the

7

plaintiff could prove every other element of his three causes of actions, he has failed to make a sufficient showing that his damages were caused by the defendants' conduct.

Determining the damages stemming from a malpractice action "often involves the burden of showing that, but for the negligence of the attorney, the client would have been successful in the prosecution or defense of an action." Lewandowski v. Cont'l Cas. Co., 276 N.W.2d 284, 287 (1979) (citation omitted). Therefore, the question of whether damages flowed to the plaintiff as a result of the defendants' conduct as his attorney is a question of law. Gen. Acc. Fire & Life Assur. Corp. v. Cosgrove, 42 N.W.2d 155, 156 (Wis. 1950) ("Both parties agree that the sole question in this case is whether damages flowed to appellant as a result of respondent's failure to settle the bill of exceptions. This is obviously a question of law properly disposed of on motion for summary judgment.")

The plaintiff provides many arguments to support his assertion that the defendants' conduct caused him to lose the H&H case. The court groups these arguments into two main theories: (1) the defendant's deficient legal representation prevented Judge Stadtmueller from ruling in his favor; and (2) Vavreck prevented the plaintiff from settling the case out of court. See Dkt. No. 63. Both arguments fail.

1. No reasonable juror could find that Judge Stadtmueller dismissed the plaintiff's underlying case because of alleged deficiencies in the defendants' legal representation.

The plaintiff argues that Judge Stadtmueller's questioning of the defendants' representation of the plaintiff in his summary judgment order demonstrates that the plaintiff would have prevailed but for the defendants' deficient legal representation. Dkt. No. 63 at 2. Judge Stadtmueller's order pointed out two actions by the defendants which he considered to be deficiencies: (1) failing to object to H&H's proposed findings of fact; and (2) "senselessly" stipulating that there was no standing. H&H, dkt. no. 57 at 2, 14.

        a.    Failure to object to H&H's proposed findings of fact.

No reasonable juror could find that the defendants' failure to object to H&H's proposed findings of fact affected Judge Stadtmueller's overall determination. The H&H case presented two issues for Judge Stadtmueller to resolve: (1) whether the plaintiff consented to receiving WE Energies' calls on his cell phone; and (2) whether the plaintiff could revoke consent with an outgoing message (voicemail). Id. at 16, 20. Judge Stadtmueller found that the plaintiff did consent and that an outgoing message could revoke consent. Id. at 19, 20-21 (". . . but the evidence submitted by WE Energies shows that WE Energies obtained Mr. Andersen's cell phone number during conversations about his *account,* which included service to the 505 Lake Street address."). Although Judge Stadtmueller's decision notes many of the defendants' failures, the court cannot find that these failures prompted his ultimate decision to grant summary judgment in favor of H&H.

9

> *i.* *Consent to WE Energies calls.*

Under the TCPA, 47 U.S.C. §227(b)(1)(A), it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded voice to a cell phone, without the prior express consent of the called party. The parties agreed that H&H made this type of phone call to the plaintiff's cell phone, so the burden shifted to H&H to show prior express consent. H&H, dkt. no. 57 at 16. H&H submitted evidence, and the plaintiff admits in his summary judgment brief, that the plaintiff provided his cell phone number to WE Energies in connection with service at a previous address. Dkt. No. 63 at 13; H&H, dkt. no. 57 at 5. Because the plaintiff conceded that he'd provided WE Energies with his cell phone number, the only issue for Judge Stadtmueller to decide was the legal one: whether providing a cell phone number for service at one address meant that the plaintiff also consented to calls on his cell phone concerning other addresses. H&H, dkt. no. 57 at 18.

Judge Stadtmueller concluded that all interactions with WE Energies, whether they involved service at one or multiple addresses, constituted interaction involving one account. Id. Said another way, the plaintiff had one account with WE Energies that encompassed service at multiple addresses. Providing his cell phone to WE Energies in relation to a service-related issue at one address meant that WE Energies had consent to call the plaintiff on that phone for all his other WE Energies service addresses. No reasonable juror could have found that, had Vavreck objected to H&H's proposed findings of

10

fact, such an objection would have changed this legal determination; Judge Stadtmueller based his determination on an admitted fact.

Perhaps the plaintiff could have argued that the defendants' failure to object to the proposed findings of fact acted as a waiver, preventing him from appealing Judge Stadtmueller's ultimate conclusion. The plaintiff had thirty days from the date of judgment (April 21, 2014) to file an appeal. See Fed. R. App. P. 4(a)(1)(A). He did not file an appeal within that time. The plaintiff's motion to reconsider extended the time period, meaning that the plaintiff could have filed an appeal within thirty days of Judge Stadtmueller's June 2, 2014 order denying the motion to reconsider. See Fed. R. App. P. 4(a)(4). He did not file an appeal within that time. The defendants withdrew on April 28, 2014. The plaintiff had from April 21 to July 2 to find new counsel and file an appeal. He did not file an appeal during that time—either through counsel, or on his own. Especially given the number and extent of the pleadings filed in this case, the court cannot conclude that any errors the defendants may have made prevented the plaintiff from pursuing an appeal.

The plaintiff writes quite a bit in his briefs about why he believes Judge Stadtmueller erred in concluding that the plaintiff gave WE Energies consent to use his cell phone number. Dkt. No. 63 at 10-20. Judge Stadtmueller considered and disregarded many of the plaintiff's arguments in his order on the motion to reconsider. H&H, dkt. no. 66 at 2 ("Here, Mr. Andersen has not presented ample legal authority to make the Court question its prior order. Thus, the Court stands by the legal reasoning in its summary judgment order,

and finds no reason to grant Rule 60(b)(1) relief."). Whether Judge Stadtmueller got the law right was a question for direct appeal, and does not factor into this court's causation analysis. Judge Stadtmueller's order denying reconsideration demonstrates that even if the defendants had made all of the plaintiff's recommended legal arguments challenging the one-account theory, he still would have ruled against the plaintiff.

*ii.     Revocation of consent.*

Next, the plaintiff attacks Judge Stadtmueller's legal conclusion that a voicemail message is not enough to revoke consent. Dkt. No. 63 at 7. The TCPA is meant to address automatic dialer calls. See 47 U.S.C. §227(b). Judge Stadtmueller had to answer the following question: does a voicemail effectively revoke consent when the incoming call involves an artificial or prerecorded voice. H&H, dkt. no. 57 at 20.

Judge Stadtmueller determined that a voicemail did not effectively revoke consent, because the nature of an automated call is such that the answering party or voicemail is often ignored. Id. at 20-21. He concluded that an outgoing message (voicemail) revoking consent would "create a trap for all debt collectors who use automatic dialers. . . ." Id. at 21.

The plaintiff argues that Vavreck failed to include evidence that H&H made live calls, instead of auto calls, to his cell phone (implying that WE Energies representatives could have heard his voicemail message revoking consent). Dkt. No. 63 at 7. The court finds that even had the defendants included this evidence, it would not have changed the outcome. Calls violate

12

the statute only if they are automated. Live calls do not violate the TCPA. Even if WE Energies may have heard the plaintiff's voicemail through a live call, that would not impact Judge Stadtmueller's conclusion that a voicemail message does not suffice to revoke consent for *automated* calls.

b. <u>Stipulation to lack of injury-in-fact.</u>

Judge Stadtmueller also found that during the plaintiff's deposition in the H&H case, the defendants stipulated that the plaintiff had not incurred any injury-in-fact—specifically, had incurred no damages. H&H, dkt. no. 57 at 13-14. Judge Stadtmueller found this "perplexing," nothing that "[e]ssentially, in stipulating to that fact, [counsel] stipulated that his client could not pursue this case." Id. at 14. Judge Stadtmueller found that conclusion even more puzzling, given that he himself "believ[ed] that there is sufficient evidence of an injury-in-fact to support standing." Id. Because Judge Stadtmueller's view on whether the plaintiff had suffered an injury differed from the view of the plaintiff's counsel, Judge Stadtmueller analyzed the issue in more depth. While he concluded that, under Seventh Circuit law, a party *could* "stipulate away the existence of standing," id. at 14, Judge Stadtmueller was hesitant to dismiss the plaintiff's case against H&H based on that stipulation, id. at 15. He found that the stipulation was vague, and that his own review of the facts and law indicated that the plaintiff *had* suffered in injury in fact. Id. The court concluded:

> For these reasons—the vagueness of the stipulation and the countervailing facts that would establish standing—and in spite of the Court's concerns with overstepping its Article III powers, the Court determines it

13

> best to treat Mr. Andersen as having standing in spite of this stipulation. Even so, the Court ultimately determines that Mr. Andersen's claims must be dismissed for other reasons; thus, the Court's standing determination makes little substantive difference, other than that the Court proceeds through the remainder of its substantive analysis.

Id. at 16.

No reasonable juror could find that the defendants' stipulation to lack of an injury-in-fact was the basis for Judge Stadtmueller's dismissal of the plaintiff's case against H&H. Judge Stadtmueller explained in detail that he did not credit the stipulation, and that it was not the basis for his decision.

        c.      <u>Conclusion</u>.

It is true that Judge Stadtmueller questioned the performance of the defendants on the grounds the plaintiff has cited. The question here, however, is not whether counsel may have been deficient in their representation of the plaintiff, but whether those alleged deficiencies caused the plaintiff to suffer damages—in other words, caused him to lose the H&H case, or fail to recover in that case. The record contains no evidence that the defendants' allegedly deficient legal representation caused the plaintiff to lose the H&H case.

        2.      No reasonable juror could find that the defendants' conduct prevented the plaintiff from obtaining a settlement.

The plaintiff argues that defendant Vavreck prevented him from obtaining a settlement from the defendants. Dkt. No. 63 at 8. Specifically, he asserts that he wanted to make a settlement offer of $60,000, but that Vavreck advised him to wait until after the summary judgment briefing to obtain a

larger settlement. Id. In support of this argument, the plaintiff submits several emails between him and Vavreck. Dkt. No. 69. Contrary to the plaintiff's assertion, these emails demonstrate that the plaintiff's own desire for a large settlement, not Vavreck's actions, prevented him from settling. See Dkt. No. 69, Pl. Ex. 23, 24, 33, 35.

The emails show that the plaintiff's absolute floor for settlement was $50,000, and that he knew that H&H's ceiling was $10,000.00. Dkt. No. 69, Pl. Ex. 33 & 35. The plaintiff states that the $60,000 settlement offer that he wanted Vavreck to send to opposing counsel was meant to make him look reasonable in front of Judge Stadtmueller. Id., Pl. Ex. 24. The email shows that the plaintiff knew that H&H would not accept the offer. Id. Further, while Vavreck did encourage the plaintiff to wait out summary judgment briefing for a larger settlement, it was in the context of discussing abandoning a particular claim. Id. Vavreck's email to the plaintiff reads: "So, dismissing the injunction claim is not a good move at this point either. If we win the SJ motion, that's our leverage to settle for $162,000 instead of $81,000. It's a pretty big difference no?" Id. Vavreck did not tell the plaintiff to refuse to accept or make any settlement offers in order to wait out a large settlement. Vavreck told the plaintiff not to dismiss a particular claim because dismissing that claim may reduce leverage for a later settlement. Accordingly, the plaintiff's emails contradict his arguments. Based on these emails, no reasonable juror could find that the plaintiff legitimately wanted to settle and that Vavreck convinced him not to, or prevented him from doing so.

15

### C. The Defendants Had No Duty to Pursue the FDCPA Claim.

The plaintiff alleges that the defendants committed legal malpractice by refusing to pursue his FDCPA claim. Dkt. No. 63 at 9. The defendants respond that they had no duty to bring a frivolous claim. Dkt. No. 52 at 24.

To prevail on a legal malpractice claim under Wisconsin law, the plaintiff must prove (1) the existence of an attorney-client relationship, (2) acts or omissions constituting the alleged negligence, (3) that the acts or omissions proximately caused the plaintiff's injury, and (4) the extent of the injury. Kraft, 869 N.W.2d at 510.

"Whether a duty exists is a question of law to be determined by the court." Cook v. Cont'l. Cas. Co., 509 N.W.2d 100, 103 (Wis. Ct. App. 1993) (citing Schicker v. Leick, 162 N.W.2d 66, 69 (1968)). Attorneys have the duty "to exercise that degree of care, skill, and judgment which is usually exercised under like or similar circumstances." Id. (quoting Wis JI-Civil 1023.5). In federal court, attorneys have a duty to the court and opposing counsel to avoid needless legal costs and delay pursuant to Fed. R. Civ. P. 11. Divane v. Krull Elec. Co., 319 F.3d 307, 315 (7th Cir. 2003). When a client asks his attorney to pursue a frivolous claim, the attorney faces competing interests.

The Wisconsin Supreme Court considered a similar situation in In re Disciplinary Proceedings Against Boyle, 872 N.W.2d 637, 646 (2015).

> As a defense, Attorney Boyle argues on appeal that he could not have advanced D.P.'s claims more than he did because the claims were borderline-frivolous. If that is so, however, then Attorney Boyle had a responsibility to thoroughly explain his position to D.P. The referee found that he did not do so. What Attorney

16

> Boyle did, instead, was to continue to nominally represent D.P. while allowing certain claims to stagnate and others to expire altogether. That is not 'diligence' as our rules define it.

Id. Although it was discussing ethics and not malpractice, the Boyle court's discussion is helpful in this situation. Its language suggests that if an attorney wants to avoid bringing a frivolous claim, he should thoroughly explain to his client that the claim is frivolous, and give the client time to find replacement counsel. By implication, if an attorney follows this directive, he has fulfilled his duty to his client and is not obligated to bring the frivolous claim just because the client demands that he do so.

In this case, the defendants had no duty to bring the FDCPA claim. Even if the defendants originally had agreed to represent the plaintiff on the FDCPA claim (a fact in dispute), it appears that they quickly reconsidered and gave the plaintiff the opportunity to find another attorney to bring the claim. Dkt. No. 63 at 9; Dkt. No. 53 at ¶39. By June 27, 2013, the plaintiff knew that Vavreck did not want to pursue the FDCPA claim. Dkt. No. 53 at ¶41. Vavreck explained to the plaintiff on that date that he thought the claim was frivolous, and provided a case in support. Dkt. No. 55-12 at 1-2. According to the plaintiff, the statute of limitations ran on July 24, 2013. Pl. Ex. 33. That means that the plaintiff had about a month to find another attorney (or to bring the claim on his own). Instead, he chose to argue with Vavreck, and to continue trying to convince Vavreck to bring the claim. Dkt. No. 53 at ¶¶39, 40,44. The plaintiff finally agreed to abandon the claim on July 16, 2013. Dkt. No. 55-17 at 1. No

17

reasonable jury could find that Vavreck had a duty to pursue the claim under these circumstances.

**V.   CONCLUSION**

The plaintiff has failed to demonstrate that there is a genuine dispute of material fact about whether the defendants' allegedly deficient legal representation caused him to fail to win or settle the H&H case. He has failed to demonstrate that there is a genuine dispute of material fact regarding whether the defendants had a duty to bring the FDCPA claim. For these reasons, the defendants are entitled to summary judgment as a matter of law.

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 51. The court **DENIES** the plaintiff's motion for summary judgment. Dkt. No. 61.

Dated in Milwaukee, Wisconsin, this 21st day of February, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge